Battle, J.
 

 There are some cases of homicide which are so near the dividing line between manslaughter and murder upon implied malice, that it is difficult to ascertain on which side they are to be found. The present case is one of that number, and it is only after a full examination of various instances of killing upon provocation more or less slight, and reflection upon the principles on which they have been decided, that we have been enabled to determine in which grade of guilt it is to be classed. In the case of the
 
 State
 
 v.
 
 Garry,
 
 1 Jones’ Rep. 280, we attempted the difficult task of stating, with some precision, the general rule, with the exceptions to it, which the Judges and the sages of the law have establish
 
 *199
 
 ed upon this subject. The general ruléis, that a killing upon provocation is not murder, but manslaughter. But there are three well-defined exceptions:
 

 “ 1. Where there is provocation, no matter how strong, if the killing is done in an unusual manner, evincing thereby deliberate wickedness of heart, it is murder.
 

 “ 2. Where there is but slight provocation, if the killing is done with an excess of violence out of all proportion to the provocation, it is murder.
 

 “ 3. Where the right to chastise is abused, if the measure of chastisement, or the weapons used, be likely to kill, it is murder.”
 

 ITis Honor in the Court below thought this case came within the second exception to the general rule, and the question is whether the circumstances, under which the homicide was committed, justify his opinion.
 

 In the consideration of this question, the first inquiry which is to be made is, whether the provocation which the prisoner received before he struck the fatal blow, is to be deemed a slight or trivial one, as it was held to be .by his Honor. The injurious and unlawful restraint of a person’s liberty, is undoubtedly considered a provocation of a grade sufficient to extenuate a killing; as where a creditor placed a man at the chamber-door of his debtor with a sword undrawn, to prevent him from escaping, while a bailiff was sent for to arrest him; and the debtor stabbed the creditor, who was discoursing with him in the chamber, it was held to be manslaughter only;
 
 Rex
 
 v.
 
 Buckner,
 
 Style’s Rep. 467. So, where a sergeant in the army laid hold of a fifer, and insisted upon carrying him to prison ; the fifer resisted ; and whilst the sergeant had hold of him to force him, he drew the sergeant’s sword, plunged it into his body, and killed him. The sergeant had no right to make the arrest, except under the articles of war and they were not proved. “ Bulleb, J., considered it in two lights ; first, if the sergeant had authority ; and secondly, if he had not, on account of the coolness, deliberation and reflection, with which the stab was given.” The jury found the prisoner
 
 *200
 
 guilty of murder; but the Judges were unanimous that, as the articles of war were not proved, to show the authority of the sergeant to arrest, the conviction was wrong;
 
 Rex
 
 v. Withers, reported in 1 East’s P. C. p. 233. See also 1 Russ, on. Or. and M. 488. The-same doctrine was recognised as law in this State, in the case of the
 
 State
 
 v.
 
 Craton,
 
 6 Ire. Rep. 173, where the two cases, above mentioned, were cited with approbation. It is not stated in either case, whether the illegal restraint of the prisoner’s liberty was deemed a slight or a great provocation; but wo must suppose that it could not have been either slight or trivial in the case of
 
 Withers,
 
 else the Judges would hardly have been unanimous in holding that an act of stabbing with a very deadly weapon, done apparently “with coolness, deliberation and reflection,” was only manslaughter. The circumstances under which the homicide was committed in the present case, made out a case of provocation, certainly not less aggravated than in that of
 
 Withers.
 
 The parties were neighbors, friends, and distant relatives, and had been drinking together in a friendly manner only a short time before the fatal transaction. The prisoner got his horse, mounted him and took his bag, having in it a jug containing a gallon of molasses, and started home, lie had proceeded about twenty-or thirty steps, when the deceased, who was drunk, called to him to stop and come back and take another drink. lie did stop, and the deceased came up and took hold of the reins of his bridle and would not let him go. The prisoner tried to get loose, but the deceased held on until the bridle-rein broke. lie then became angry and got off his horse and struck the deceased with his jug in the bag.
 

 Tin's was from ten minutes to three quarters of an hour after the deceased stopped the prisoner, the witnesses differing as to the length of time the parties were together before the blow was struck. When that was done, both the prisoner and the deceased fell to the ground, and, upon rising, the former knocked the latter down again with the jug, and then struck him, while down, two more blows with the jug which
 
 *201
 
 was still in the bag. The prisoner, then saving to the deceased, “ damn yon, lie there,” mounted his horse and rode off. It cannot be denied that the act of the deceased was an illegal restraint of the prisoner’s liberty, nor that his holding on to the prisoner’s bridle-rein, against his remonstrances, until the rein broke, was well calculated to excite his passions, and they naturally prompted him to strike the deceased with what was most convenient, which was the jug in the hag then in his hands. The fall was well calculated to excite his passions still higher; and then, to strike again and again with what, he still held in his hands, was the impulse of blind fury. There was no appearance of “ coolness, deliberation and reflection,” in his conduct, and the exclamation which follows, “damn you, lie there,” was the dictate, and the evidence, of the
 
 furor brevis,
 
 which had just so fatally expended itself. That the act of the prisoner was highly culpable, no one can deny, yet no one can say that it did not proceed from the transport of passion naturally excited by the unlawful conduct of the deceased. It was the act of an
 
 infirm
 
 human being, during the brief period when tlie sway of his reason was disturbed, and before it could be calmed by reflection. He did not seek an instrument of death ; and though he used a deadly weapon, it was one which the deceased, by making it necessary for him to dismount, compelled him to have in his hands at the moment.
 

 AVe do not think that the provocation was slight, nor was it great. It was sufficient, to arouse passion even in an ordinarily well-balanced mind, and the killing, though done with an excess of violence, was not out of all proportion to the provocation. Our opinion, therefore, is, that the conviction for murder was wrong, and as it was produced by an improper charge from the Court to the jury, the judgment must be reversed, and a
 
 venire ele novo
 
 awarded.
 

 Pee Cueiam, Judgment reversed.